# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

JOSE ENRIQUE MENDIOLA                                                    PLAINTIFF

v.                              NO. 5:13-cv-00221 JLH/HDY

JARED BYERS, ROBERT PIERCE,                                            DEFENDANTS
and CYNTHIA G. COURINGTON

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

RECOMMENDATION

INTRODUCTION. Defendants Jared Byers ("Byers"), Robert Pierce ("Pierce"), and Cynthia G. Courington ("Courington") have filed the pending motion for summary judgment. See Pleading 46.[1] Plaintiff Jose Enrique Mendiola ("Mendiola") has responded to their motion, in part, by filing the pending cross motion for summary judgment. See Pleading 55. For the reason that follows, the undersigned recommends that the defendants' motion be granted and Mendiola's motion be denied. This case should be dismissed without prejudice, judgment should be entered for the defendants, and any appeal by Mendiola should be deemed frivolous and not taken in good faith.

FACTS. The parties have submitted statements of the material facts they maintain are not in dispute. See Pleadings 47, 58, 62. Their statements, and their pleadings and exhibits, establish that the material facts are not in dispute. Those facts are as follows:

1. Mendiola is a prisoner in the custody of the Arkansas Department of Correction ("ADC") who came to be housed at its Pine Bluff Unit after the ADC Diagnostic Unit was closed. See Pleading 48, Exhibit 20 at 3; Pleading 48, Exhibit 21 at 4.

2. In April of 2012, he asked ADC officials for copies of his Judgment and Commitment Order and Time Computation Card in order to review the calculation of his sentence. See Pleading 48, Exhibit 21 at 3.

---

[1]

Federal Rule of Civil Procedure 56(a) provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3. In the course of complying with his request, ADC officials determined that "several documents were missing from his [inmate] jacket and … documents in the jacket had been altered." <u>See</u> Pleading 48, Exhibit 21 at 3.

4. ADC officials began an investigation into how the documents came to be missing and/or altered. <u>See</u> Pleading 48, Exhibit 21.

5. ADC officials quickly identified Mendiola as a suspect, believing that he had somehow gained access to his inmate jacket and removed and/or altered several of the documents in it. <u>See</u> Pleading 48, Exhibit 21.

6. On April 17, 2012, ADC officials searched Mendiola's cell but found no contraband or "any item that would violate ADC policy …" <u>See</u> Pleading 58 at 2.

7. The next day, Pierce placed Mendiola in an isolation cell at the direction of Byers. <u>See</u> Pleading 2 at 5; Pleading 58 at 2.

8. ADC officials searched Mendiola's old cell a second time but, like the day before, found no contraband. <u>See</u> Pleading 2 at 5; Pleading 58 at 2.

9. Pierce nevertheless confiscated all of Mendiola's property at the direction of Byers, property that included all of the legal papers Mendiola had in his possession as a result of his involvement in at least two on-going federal court cases. <u>See</u> Pleading 2 at 5-6; Pleading 47 at 1; Pleading 58 at 1-3.

10. Mendiola was then moved to the ADC Maximum Security Unit and placed in administrative segregation. <u>See</u> Pleading 2 at 5-6; Pleading 48, Exhibit 20 at 2-3; Pleading 58 at 3.

-4-

11. Beginning on April 19, 2012, and continuing through May 14, 2012, Mendiola filed eight administrative grievances, all or a part of each grievance involved his challenge to the confiscation of his legal papers by Byers and Pierce. See Pleading 48, Exhibits 3-12; Pleading 57 at 4; Pleading 58 at 3-4.

12. Barbara Williams ("Williams"), the ADC Inmate Grievance Coordinator, represents in an affidavit that the ADC grievance procedure is as follows:

> In the first step, an inmate initiates an informal grievance that must be brought within 15 days of the event he is complaining about. If the inmate is not satisfied with the problem solver's response, [the inmate] must initiate the formal procedure, which is known as Step Two. This sends … the grievance to the attention of the unit's warden and administrators.

> After reviewing a written response from the warden, an inmate must appeal that decision to the deputy director level. This is the inmate's final appeal, and the grievance is considered exhausted once the appeal decision is made.

> Failure to follow any of the policy deadlines will result in a grievance or grievance appeal being rejected as untimely.

See Pleading 48, Exhibit 3 at 2.[2]

13. Mendiola's first administrative grievance was MX-12-1205 and was filed on April 19, 2012; in the grievance, he challenged the confiscation of his legal papers by Byers and Pierce. See Pleading 48, Exhibit 4 at 1. The grievance was resolved in the following manner:

---

[2]

The ADC amended its grievance policy in May of 2012, but the "basic framework for exhausting a grievance was unchanged …" See Pleading 48, Exhibit 3 at 2.

A. Mendiola subsequently signed a grievance waiver in which he represented that MX-12-1205 had been resolved and/or he no longer desired to pursue it. <u>See</u> Pleading 48, Exhibit 5.

B. Given the representations contained in the grievance waiver, the warden of Mendiola's unit dismissed MX-12-1205 on May 29, 2012. <u>See</u> Pleading 48, Exhibit 4 at 1, 3.

C. Mendiola appealed the dismissal of MX-12-1205 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 4 at 1.

14. Mendiola's second administrative grievance was MX-12-1183 and was filed on April 25, 2012; in the grievance, he challenged other issues but did include a challenge to the confiscation of his legal papers by Byers and Pierce. <u>See</u> Pleading 48, Exhibit 7 at 1.[3] The grievance was resolved in the following manner:

A. The warden of Mendiola's unit dismissed the grievance on May 23, 2012, finding, in part, the following: "Your previous grievances concerning your legal work have been waived. ..." <u>See</u> Pleading 48, Exhibit 7 at 3.

B. Mendiola appealed the dismissal of MX-12-1183 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 7 at 1.

---

[3] It is not clear why Mendiola's administrative grievances were not filed in sequential order.

15. Mendiola's third administrative grievance was MX-12-1184 and was filed on April 25, 2012; in the grievance, he challenged the confiscation of his legal papers by Byers and Pierce. <u>See</u> Pleading 48, Exhibit 6 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 23, 2012, finding, in part, the following: "Unit records reflect that your previous grievances concerning your legal work have been waived. ..." <u>See</u> Pleading 48, Exhibit 6 at 3.

B. Mendiola appealed the dismissal of MX-12-1184 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 6 at 1.

16. Mendiola's fourth administrative grievance was MX-12-1237 and was filed on April 30, 2012. <u>See</u> Pleading 48, Exhibit 8 at 1. Although he largely devoted the grievance to challenging his assignment to administrative segregation, he did mention the confiscation of his legal papers by Byers and Pierce. <u>See</u> Pleading 48, Exhibit 8 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 29, 2012. <u>See</u> Pleading 48, Exhibit 8 at 3.

B. Mendiola appealed the dismissal of MX-12-1237 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 8 at 1.

17. Mendiola's fifth administrative grievance was MX-12-1356 and was filed on May 5, 2012; in the grievance, he challenged the confiscation of his legal papers by Byers and Pierce. <u>See</u> Pleading 48, Exhibit 9 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 17, 2012, because Mendiola had signed a grievance waiver and the warden considered the matter resolved. <u>See</u> Pleading 48, Exhibit 9 at 3.

B. Mendiola appealed the dismissal of MX-12-1356 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 9 at 1.

18. Mendiola's sixth administrative grievance was MX-12-1322 and was filed on May 8, 2012; in the grievance, he again challenged the confiscation of his legal papers by Byers and Pierce. <u>See</u> Pleading 48, Exhibit 10 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 17, 2012, because, as the warden had noted before, Mendiola had signed a grievance waiver and the warden considered the matter resolved. <u>See</u> Pleading 48, Exhibit 10 at 3.

B. Mendiola appealed the dismissal of MX-12-1322 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. <u>See</u> Pleading 48, Exhibit 10 at 1.

-8-

19. Mendiola's seventh administrative grievance was MX-12-1323 and was filed on May 10, 2012; in the grievance, he again challenged the confiscation of his legal papers by Byers and Pierce. See Pleading 48, Exhibit 11 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 17, 2012, because, as the warden had noted before, Mendiola had signed a grievance waiver and the warden considered the matter resolved. See Pleading 48, Exhibit 11 at 3.

B. Mendiola appealed the dismissal of MX-12-1323 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. See Pleading 48, Exhibit 11 at 1.

20. Mendiola's eight administrative grievance was MX-12-1357 and was filed on May 14, 2012; in the grievance, he again challenged the confiscation of his legal papers by Byers and Pierce. See Pleading 48, Exhibit 12 at 1.The grievance was resolved in the following manner:

A. The warden of Mendiola's unit rejected the grievance on May 17, 2012, because Mendiola had previously signed a grievance waiver and the warden considered the matter resolved. See Pleading 48, Exhibit 11 at 3.

B. Mendiola appealed the dismissal of MX-12-1357 but did not do so until June 6, 2013, or more than a year after it was dismissed; his appeal was dismissed as untimely. See Pleading 48, Exhibit 12 at 1.

21. On May 16, 2012, Courington interviewed Mendiola in connection with the investigation into the missing and/or altered documents. <u>See</u> Pleading 47 at 1; Pleading 48, Exhibit 21.

22. Her report contains, in part, the following notes and summary of her interview with Mendiola, a summary that is confirmed by the audio recording of the interview, <u>see</u> Pleading 48, Exhibit 19:

REFERRAL CHRONOLOGY

On April 23, 2012, Mr. Raymond Naylor, IA Administrator received a request from Warden Mark Cashion, Pine Bluff Complex to investigate the allegations of a breach in security in the records department. …

…

Copies of Judgment and Commitment found in file contain markings not on original. These markings are hand printed "Add.5," "Add.6" and so on printed on the right bottom corner of each page. On each of the pages marked "Add #" items were changed. Example: ADD 6 page Sentence imposed was changed from 180 to 168. On Add 9 page time to serve on all offenses listed above was changed from 780 to 168. Also on this page it is evident that the consecutive/concurrent was covered, copied and retyped and then the concurrent was circled. The font is different and not as dark as the rest of the document.

A copy (should be original) time computation card in his jacket was changed from CS to CC (CS=consecutive, CC=concurrent) and this was also changed on the time section of his admission summary.

During [the] 90 day span of time from 9-1-11 to 1-11-12, Inmate Mendiola was assigned to the Law Library at the Diagnostic Unit. The files in the Records Office were maintained in filing cabinets and behind a locked door after hours. The key to the Office door and filing cabinets were maintained in the control booth and could have been accessed by anyone checking it out. [He] had access to computer, typewriter, copier, and supplies.

INTERVIEW OF INMATE MENDIOLA ON MAY 16, 2012

Inmate Mendiola maintained that he had not done anything wrong. He stated he only requested a copy of his Judgment and Commitment so that he could supply information to a new attorney working on his case. It was pointed out to Mendiola that although the physical jacket may have been changed the records in eOmis had not and that would be the ultimate factor in anyone's release dates. After all the allegations of changes were pointed out to [him] and assuring him that we were more concerned with how the transactions occurred than giving him a disciplinary, [he] admitted that he changed the documents. [Mendiola] explained that he worked nights in the Law Library and the other Law Library clerk did not like working at nights, so he had it all to himself. He stated he was working on paperwork for SPU and was at the copier a lot. He stated no officer or inmate assisted him, but due to the chaos of the impending closure of Diagnostic, no one paid Mendiola any attention. [He] stated the record's office door was unlocked on this particular day and he was able to enter. He found his jacket and removed it, made copies, corrected the papers, and then replaced them. He stated it was the night of the Cotton Bowl (01-06-2012) so even more distractions were occurring. He stated it was one of those incidents where he was at the right place and the right time.

See Pleading 48, Exhibit 21 at 4.

23. At the conclusion of the interview, Courington returned Mendiola's legal papers. See Pleading 48, Exhibit 21 at 6; Pleading 57 at 5.

24. On May 24, 2012, and again on May 25, 2012, Mendiola signed a grievance waiver in which he represented that MX-12-1205 had been resolved and/or he no longer wanted to pursue it. See Pleading 48, Exhibit 5 at 1-2.

25. On May 24, 2013, or approximately one year later, he filed administrative grievance PB-13-61 and again challenged the confiscation of his legal papers by Byers and Pierce. See Pleading 48, Exhibit 15 at 1.

26. The warden of Mendiola's unit dismissed PB-13-61 as untimely, and the deputy director affirmed the dismissal. <u>See</u> Pleading 48, Exhibit 15 at 3-5.

27. On June 6, 2013, Mendiola filed administrative grievance GR-13-1270 and also appealed the dismissal of his earlier grievances; he maintained in those submissions that his earlier grievances concerning the confiscation of his legal papers should not have been dismissed as untimely. <u>See</u> Pleading 48, Exhibit 16 at 1.

28. The warden of Mendiola's unit dismissed GR-13-1270 as untimely, and the deputy director affirmed the dismissal. <u>See</u> Pleading 48, Exhibit 16 at 3-4.

<u>PLEADINGS</u>. Mendiola commenced the case at bar on July 17, 2013, by filing a complaint pursuant to 42 U.S.C. 1983 and joining Byers, Pierce, and Courington. In the complaint, Mendiola alleged that the defendants had confiscated his legal papers in violation of his constitutional rights. He alleged that the confiscation of his legal papers impaired his ability to prosecute two cases in federal court; allowed sensitive information about him to become known, placing him and his family in great danger; allowed attorney-client information to become known; and resulted in documents being taken, misplaced, and/or lost.

The defendants came to file the pending motion for summary judgment. <u>See</u> Pleading 46. In the motion, they asked that Mendiola's complaint be dismissed because, among other reasons, the Prison Litigation Reform Act ("Act") requires that all available administrative remedies be exhausted before litigation is begun, and he "never exhausted a relevant grievance against [them] before filing suit." <u>See</u> Pleading 46 at 1.

Mendiola responded to the defendants' motion, in part, by filing a cross motion for summary judgment. <u>See</u> Pleading 55. In his motion, and in his response to the defendants' motion, he maintained that he received his legal papers from Courington before the warden of Mendiola's unit made a decision on the first administrative grievance and, thus, Mendiola had no administrative remedy to exhaust.

<u>ANALYSIS</u>. Before addressing the defendants' assertion that Mendiola failed to exhaust his administrative remedies before commencing litigation, the undersigned makes note of one preliminary matter. It appears that Courington had little involvement in the events giving rise to this litigation. The undisputed material facts establish that she simply conducted an interview with Mendiola, returned his legal papers after the interview concluded, and prepared a report for her supervisors. There is no evidence she confiscated, or ordered the confiscation of, his legal papers. Liberally construing his <u>pro se</u> pleadings, though, the undersigned assume without deciding that she unnecessarily delayed the return of his legal papers.

The requirement that all available administrative remedies be exhausted before a prisoner can begin litigation in federal court is well established. United States District Court Judge Harry F. Barnes, in adopting the recommendation of United States Magistrate Judge Barry A. Bryant, found the following with regard to the requirement:

> As amended by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. …

"This provision does not require exhaustion of <u>all</u> remedies; it requires the exhaustion of 'such administrative remedies as are available.'" <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir.2001). The PLRA does not contain a definition of the term "available." However, the Eighth Circuit has noted that "the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable ... accessible.' " <u>Id.</u> (citing Webster's Third New International Dictionary 150 (1986)).

The Supreme Court in <u>Booth v. Churner</u>, 532 U.S. 731, 738-39 ... (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." <u>Walker v. Maschner</u>, 270 F.3d 573, 577 (8th Cir.2001). Further, the term "administrative remedies" has been held to encompass remedies not promulgated by an administrative agency. <u>Concepcion v. Morton</u>, 306 F.3d 1347, 1352 (3d Cir.2002). Specifically, it has been held that a grievance procedure contained in a handbook constitutes an available administrative remedy within the meaning of 1997e(a). <u>Conception</u>, 306 F.3d at 1352. When all claims have not been exhausted, the case is subject to dismissal. <u>Kozohorsky v. Harmon</u>, 332 F.3d 1141, 1143-44 (8th Cir.2003)...

When there is a multi-step grievance procedure, the courts have held that a prisoner must follow each step of the grievance procedure or be foreclosed from litigating. <u>See</u> e.g., <u>Thomas v. Woolum</u>, 337 F.3d 720, 726-27 (6th Cir.2003)("an inmate does not exhaust available administrative remedies when the inmate ... fails to commence the grievance process or to run the gamut of potential appeals.")(internal quotation marks and citation omitted); <u>Jernigan v. Stuchell</u>, 304 F.3d 1030, 1032 (10th Cir.2002)("An inmate who begins the grievance process but does not complete it is barred from pursing a 1983 claim under PLRA for failure to exhaust his administrative remedies."); <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir.2001)(An inmate who begins the grievance process but does not complete it is barred from pursuing a 1983 claim); <u>Indelicato v. Suarez</u>, 207 F.Supp.2d 216, 219 n. 2 (S.D.N.Y.2002)(The failure to timely commence a requisite step of the grievance procedure would constitute sufficient ground to dismiss an inmate's complaint); <u>Reyes v. Punzal</u>, 206 F.Supp.2d 431, 434 (W.D.N.Y.2002)(inmate failed to show that he went beyond first steps of exhaustion requirement ...).

The exhaustion requirement is not jurisdictional and is subject to

certain defenses such as waiver, estoppel, or equitable tolling. See e.g., Chelette v. Harris, 229 F.3d 684, 688 (8th Cir.2000); Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir.1998). It has been held that the exhaustion requirement should not operate to bar an inmate's claim if prison administrators prevent or refuse to review the grievance. See e.g., Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir.2001)(prison officials refused to respond to informal resolution request that inmate completed to satisfy the requirements of the first part of the prison's three-part grievance process); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.2001)(inmate prevented from exhausting administrative remedies when prison officials failed to respond to his requests for grievance forms making the grievance procedure unavailable to him); …

> The burden is on the Defendants to show the Plaintiff did not exhaust all available administrative remedies. Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir.2002). The question that must be answered is whether there was a procedure available. Id. at 809.

See Doolittle v. Smith, 2010 WL 4669179 at 4-6 (W.D.Ark. 2010) [recommendation adopted Doolittle v. Smith, 2010 WL 4668796 (W.D.Ark. 2010)].

Applying the foregoing law to the facts of this case, the undersigned is persuaded that Mendiola failed to comply with the requirements of the Act before commencing this litigation. The undisputed material facts establish that on the day after his legal papers were confiscated, he filed MX-12-1205, the first of eight administrative grievances challenging the confiscation of his legal papers. Before the warden of Mendiola's unit had an opportunity to review MX-12-1205 at Step Two of the ADC grievance procedure, two things happened. First, Mendiola's legal papers were returned. Second, he signed a grievance waiver in which he represented that MX-12-1205 had been resolved and/or he

no longer wanted to pursue it. After the warden of Mendiola's unit reviewed MX-12-1205, he dismissed it because Mendiola had signed the grievance waiver and the matter was considered resolved. When the other, related grievances were reviewed by the warden of Mendiola's unit, they were dismissed for the same reasons. At that point, that is, after Mendiola's legal papers had been returned and the warden of Mendiola's unit had dismissed each of the grievances, was Mendiola under any obligation to appeal the warden's adverse decisions to the deputy director as required by the ADC grievance procedure? The undersigned thinks so.

When Mendiola stopped the grievance process at the unit warden level for each of his eight administrative grievances, he did not complete the process and prevented ADC officials from addressing the issues that arose from the confiscation of his legal papers.[4] For instance, in MX-12-1184, he alleged that ADC officials were rummaging through his legal papers, and he did not know if the officials were "taking anything out, putting anything in, or copying [his] legal paperwork ..." See Pleading 48, Exhibit 6 at 1. In MX-12-1357, Mendiola alleged that his legal papers contained confidential information. While it is more likely than not that the deputy director would have found as the warden of Mendiola's unit did, the likelihood of such a result did not relieve Mendiola of his obligation to completely exhaust the administrative remedies.

---

[4]

The grievance process not only affords the prison administration an opportunity to fix a problem, the process also seeks to "reduce the damages and perhaps ... shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." See Pozo v. McCaughtry, 2002 WL 596190, 1 (7th Cir. 2002).

It is also worth noting that a fair reading of the record indicates Mendiola knew, or subsequently realized, he had an obligation to proceed past the unit warden level. The record reflects that he attempted to appeal the adverse decisions made by his unit warden by filing PB-13-61 on May 24, 2013; by filing appeals in the eight grievances on June 6, 2013, or more than one year after they were dismissed by the warden of his unit; and by filing GR-13-1270 on June 6, 2013. CR-13-1270 is particularly noteworthy because it contains the following representation by Mendiola: "On or about 5-24-13, I filed a Grievance about an incident that happened 4-18-2012 at the Pine Bluff Unit. I got a response saying I was time banned. The Exhaustion requirements of the Court require that I see the administrative process through …" <u>See</u> Document 48, Exhibit 16 at 1. All of the appeals were understandably dismissed as untimely, and his appeals did nothing to cure his failure to complete the grievance process.

"Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." <u>See</u> <u>Reid v. Kelly</u>, 2014 WL 320419, 3 (E.D.Ark. 2014) [internal quotation and citation omitted]. "If administrative remedies are available, the prisoner must exhaust them." <u>See</u> <u>Reid v. Kelly</u>, <u>supra</u> [internal quotations and citations omitted]. Here, Mendiola failed to completely exhaust the administrative remedies available to him so his complaint should be dismissed.[5]

---

[5]

Liberally construing Mendiola's <u>pro se</u> submissions, he alleges other constitutional violations. For instance, he alleges that he was placed in administrative segregation without justification. Those claims should be dismissed as well because he did not complete the prison's grievance process as to the claims.

In considering the motions for summary judgment, the undersigned has viewed the facts, and inferences to be drawn from those facts, in the light most favorable to Mendiola. See Matsushita Electric Industrial Company v. Zenith Radio Corp., 475 U.S. 574 (1986). In considering the motions, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)]. Applying the foregoing principles to the facts of this case, it is clear that the defendants are entitled to judgment as a matter of law.

Accordingly, the undersigned recommends that the defendants' motion for summary judgment be granted, see Pleading 46, and Mendiola's motion for summary judgment be denied, see Pleading 55. This case should be dismissed without prejudice, judgment should be entered for the defendants, and any appeal by Mendiola should be deemed frivolous and not taken in good faith.

DATED this ___13___ day of February, 2015.

_____

UNITED STATES MAGISTRATE JUDGE